UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF NEW YORK
_____

JAMES M. BURDICK,

                     Plaintiff,

vs.

MICHAEL J. ASTRUE,

COMMISSIONER OF SOCIAL SECURITY,


                     Defendant.
_____

DECISION
and ORDER

12-CV-6195T


## INTRODUCTION

Plaintiff, James M. Burdick ("Plaintiff"), brings this action pursuant to the Social Security Act §216(i) and § 223, seeking review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB"). Plaintiff alleges that the decision of the Administrative Law Judge ("ALJ") denying his application for benefits is not supported by substantial evidence in the record and is contrary to applicable legal standards.

On February 11, 2013, the Commissioner moved for judgment on the pleadings pursuant to 42 U.S.C. § 405 (g) on the grounds that the findings of the Commissioner are supported by substantial evidence. On February 22, 2013, the plaintiff cross-moved for summary judgment seeking to reverse the Commissioner's decision or remand for a new hearing. For the reasons set forth below, this Court finds that there is substantial evidence to support the Commissioner's decision. Therefore, the Commissioner's motion for judgment on the pleadings is granted and the Plaintiff's motion is denied.

## PROCEDURAL HISTORY

On August 29, 2008 (TR 12, 190)  Plaintiff filed an application for DIB under Title II, § 216(i) and § 223 of the Social Security Act, alleging a disability since May 15, 2007 arising from pain from a back injury and pancreatitis.  Plaintiff's claim was denied on December 19, 2008 (Tr. 52-56)  At Plaintiff's request, an administrative hearing was conducted on April 29, 2010  before an Administrative Law Judge ("ALJ") (Tr. 22-45)  Burdick testified at the hearing and was represented by counsel.

On May 14, 2010, the ALJ issued a Decision finding that Burdick was not disabled at any time from the alleged onset date through the date last insured. (Tr. 12-18)   On March 8, 2012, the Appeals Council denied Plaintiff's request for review, making the ALJ's Decision the final decision of the Commissioner. (Tr. 1-4)  Plaintiff filed this action on April 17, 2012.

## BACKGROUND

Plaintiff  is a 27 years old high school graduate with one year of community college education. (Tr. 26)  He was 21 years old at the alleged onset date and 23 at the time of the hearing. Plaintiff worked for Eber Brothers Wine and Liquor Corporation ("Eber Brothers") in their warehouse packing bottles and moving boxes from November, 2005 until he was laid off in May, 2007.  (Tr. 132, 29)  The work involved lifting and carrying cases of liquor and using machinery.  Plaintiff estimated that he moved up to 70 pounds but most frequently 25 to 30 pounds in weight as part of this job. (Tr. 132, 152) Burdick testified that he injured his back on the job in July, 2006 but that he continued to work until he was laid off 10 months later. (Tr. 29)  He indicated that he would have continued working at Eber Brothers had he not been laid off but that it would have been in a lighter capacity because of the pain. (Tr. 31, 33)  He has not worked since this time.  (Tr. 28-30)

Plaintiff lives with his girlfriend and is able to take care of his own personal needs. (Tr. 144). Burdick is able to cook meals, do laundry and load the dishwasher and shop as long as he is careful about bending and twisting. (Tr. 144)  Plaintiff is able to drive a car and indeed drove to the hearing.

(Tr. 27, 145)  His social activity is limited by his inability to stand or sit for more than 30 minutes without pain. (Tr. 147)

## A. **Medical History**

Plaintiff suffers from axial low back pain with L4-L5 and L5-S1 disc herniation stemming from the back injury in July 2006.  Despite epidural injections, physical therapy, chiropractic care and narcotic medication, Burdick maintains that his pain is constant and he gains only temporary relief from these treatments.  Plaintiff has suffered from several episodes of pancreatitis that have at times required him to seek treatment at the emergency room.

Plaintiff's primary care physicians, Dr. Matthew Fleig and orthopedic specialist Dr. Gordon Whitbeck, treated Burdick for lumbar degenerative disc disease.  Dr. Fleig prescribed various pain medications and encouraged proper body mechanics and home exercise.  An MRI performed October, 2006 revealed degenerative disc disease with loss of disc height and disc signal as well as herniations at L4-L5 and L5-S1.

Dr. Whitbeck examined plaintiff on December 12, 2007 for degenerative disc disease with back pain symptoms as well as pain radiating to the legs.  Dr. Whitbeck suggested that plaintiff be treated in a multidisciplinary pain treatment center and that he consider epidural steroid injections in addition to narcotic pain relief.  (Tr. 234)

Plaintiff was examined at the Pain and Symptom Management Center, Rochester General Hospital in January 2008.  (Tr. 281) Plaintiff reported having tried Codeine, Darvocet, Aleve and Ibuprofen without relief from the pain but was taking Hydrocodone for that past 18 months.  He was prescribed Lodine XL and Gabapentin and given a lumbar epidural in February, 2008.  (Tr. 283) However, during an April, 2008 follow up examination, Plaintiff reported only having a couple hours of relief from the epidural. (Tr. 286)

In March 2008, Dr. Fleig changed plaintiff's prescription from Vicodin to Norco for pain management. (Tr. 272)  In May, 2008, an MRI revealed that plaintiff suffered from disc degeneration at

L4-L5 and L5-S1as well as stenosis at L4-L5 and L6-S1 retrolisthesis.  Dr. Fleig opined that plaintiff could perform sedentary work that did not require lifting restricting plaintiff from repetitive back movements, heavy lifting and prolonged walking.

Plaintiff was treated at Rochester Chiropractic starting in March, 2008 for 10 to 12 chiropractic treatments.  This course of therapy provided no relief to the pain and plaintiff was recommended to use a lumbar traction spinal decompression machine and low back stabilization exercises. (Tr. 258-262)

Plaintiff was examined by an Orthopaedic Surgeon, Dr. Anthony Leone, in June 2008, who did not recommend him for surgery (Tr. 229)  He was considered to be partially disabled as he did not use walking aides, had no hard neurologic deficits and no radicular symptoms. (Tr. 229)  Dr. Leone noted that Plaintiff was given some relief from chiropractic treatments and home exercises.

Similarly, in July, 2008, Dr. Fleig described Plaintiff's medical conditions as not disabling from work.  He noted that Plaintiff's lumbar degenerative disc disease caused a "slight decrease in range of motion" and that the MRI showed "moderate" changes but that the pancreatitis was "mild". (Tr. 316-318)  He found that Plaintiff did not have any physical limitations from pancreatitis and that the back injury would only limit him to lifting no greater than 20 pounds, no repetitive back movements and to limit continuous sitting to two hours at a time up to 8 hours cumulative with breaks every two hours. He would allow four hours cumulative standing with breaks every hour. (Tr. 317)

Plaintiff presented to Unity Health System on August 2, 2008 with increasing abdominal pain. He reported 6 prior pancreatic episodes over the past four years but no cause was determined.  (Tr. 238) Plaintiff was discharged with prescriptions for Protonix and Percocet and instructed to follow up with his primary care physician. (Tr. 242)

In September, 2008, Dr. Whitbeck opined that plaintiff could work only in a sedentary capacity with no lifting more than five to ten pounds. (Tr. 321)  Dr. Whitbeck referred Plaintiff to VESID (Vocational and Educational Services for Individuals with Disabilities) to review education and training to obtain a job with a sedentary description, allowing sitting and standing positions every half

hour or hour. (Tr. 321).

Plaintiff was examined in September, 2008 by occupational therapist, Dr. Paul Hartman who also concluded that plaintiff could work at the sedentary level.  He opined that plaintiff could tolerate only occasional pushing, pulling, balancing and stooping. Dr. Hartman felt that plaintiff could carry up to ten pounds, crouch, kneel and reach forward and overhead frequently.  (Tr. 205)

In a letter to the New York State Office of Temporary and Disability Assistance dated October 22, 2008, Dr. Fleig noted that although plaintiff has lumbar degenerative disc disease, there "appears to be a low level of impact on his low lumbosacral spine function." (Tr. 276)  Dr. Fleig noted that plaintiff was able to get on and off the exam table without difficulties and his motor function and reflexes were intact.  Indeed, plaintiff's range of motion of the low lumbosacral sine was only limited in backward extension. (Tr. 276)  While Dr. Fleig acknowledged that plaintiff had a few episodes of pancreatitis, he did not view this as an impediment to plaintiff working a sedentary job.  Dr. Fleig concluded:

> In my opinion, he is capable of working sedentary work with certain restrictions. Specifically, I would recommend no lifting greater than 20 lbs., no repetitive back movements (bending, climbing ladders, etc.) and no prolonged sitting (no greater than 4 hours continuous, may sit for a total of 8 hours in an 8 hour shift with breaks) or prolonged standing (no greater than 1 hour continuous, may stand for a total of 4 hours in an 8 hour shift with breaks). (Tr. 276)

In completing his appeal for denial of disability claim on January 10, 2009, plaintiff indicated that his pain had worsened and that he had become depressed due to his back injury. (Tr. 172) He was treating the pain with Norco and Vicodin. (Tr. 175)  Plaintiff indicated in his appeal papers that employers are reluctant to hire someone with a history of back issues and that "social security benefits would be great for me because it is something I can rely on and it will get me through those tough times when I can't get hired because of my disability." (Tr. 178)  He goes on to state the he suffers sleepless nights and depression because of his back injury and that social security benefits will give him a  "better outlook on life." (Tr. 178)

Plaintiff attended a four half day sessions of vocational testing in January, 2009.  (Tr. 324)  In a vocational assessment report dated January 22, 2009, Plaintiff was described as having the potential for success in on-the-job, vocational training and associates degree college programs.  Burdick admitted that he had limited career flexibility and that his only interest was becoming a Recording Engineer for which Plaintiff had the necessary aptitudes, skills and learning style necessary for training in this area. (Tr. 323)   On June 5, 2009, a letter was sent to Plaintiff from the State VESID  office advising him that his file was closed because they were unable to locate or contact him.  Plaintiff's failure to respond to his counselor's correspondences caused the cessation of services. (Tr. 330)

Dr. Fleig indicated on January 30, 2009 that plaintiff continued to have "waxing/waning" symptoms of pain and that the amount of Vicodin Plaintiff was taking was reduced. (Tr. 299) He indicated that Burdick could return to work with restrictions of no repetitive bending and twisting, lifting no more than 25 pounds and sitting and standing no more than two hours at a time. (Tr. 299) He discontinued treating Plaintiff in February, 2009 after finding an alteration made to a prescription that was written. (Tr. 318)

Plaintiff began treatment at the Finger Lakes Occupational Health Services in April, 2009. (Tr. 333-334)  Plaintiff's prescription for hydrocodone was reduced and amitriptyline was added.  By the end of 2009, plaintiff was also changed from Vicodin (Tr. 337) to Oxycodone  and was advised by his doctor that the dosage of Oxycodone needed to be reduced. (Tr. 338)

**B.  Medical History Post-Insured Status**

Plaintiff's earnings records indicate that Burdick was insured through June 30, 2009 requiring him to establish disability on or before this date in order to be entitled to DIB.  There is no dispute that this is the date Plaintiff last met the insured status requirements of the SSA.

In February, 2010, Finger Lakes Occupational Health Services medical records indicate that Plaintiff wanted to work again with VESID for job placement and that he was taking classes to be

trained as a casino dealer. (Tr. 339) He was prescribed Vicodin and Amitriptyline and referred to the spine program at University of Rochester Department of Orthopedics. (Tr. 339)

Plaintiff was treated at the Rochester General Medical Group Physical Medicine and Rehabilitation Center on July 30, 2010 for pain treatment. (Tr. 358)  After discussing treatment options, Plaintiff requested prescription for Oxycodone.  He noted that Oxycodone was the only medication that helped ease his pain but his current physician who prescribed this medication was leaving.  He was told that that office did not prescribe long term opioid medications and recommended that he follow up at a Pain Center.  Plaintiff abruptly left the room and refused further discussion. (Tr. 359)

A CT Scan performed in September 2010 found full thickness posterior radial annular tears with epidural extravasation at L4-L5 and at L5-S1 and minor degenerative changes at more cephalad levels (Tr. 347)  Dr. Whitbeck's medical records on September 28, 2010 indicate that he advised Plaintiff about the option for surgical fusion at L4-L5 and L5-S1 including the risk factors.  Although Plaintiff understood that the chance of a good or excellent result is 65% or less, Plaintiff requested to proceed with surgery. (Tr. 344)

Plaintiff had lumbar fusion surgery on November 3, 2010.  (Tr. 372-375)  On November 4, 2010, Plaintiff was treated for a pulmonary embolism after the spinal procedure requiring a vena cava filter placement. (Tr. 368)  Post-surgical imaging revealed laminectomy and fusion L4 through S1 with normal vertebral body alignment.  (Tr. 370)  Burdick was fitted with an (lumbrosacral orthotic) LSO brace which he was directed to wear three months post-surgery. (Tr. 377)

Dr. Whitbeck examined Plaintiff on March 31, 2011 at which time Plaintiff indicated that he was doing well but continued to have persistent back pain but at a level of discomfort and severity that was "much improved" from prior to surgery. (Tr. 395) Plaintiff was no longer experiencing radicular leg pain and had no numbness, weakness, balance disturbance or bowel or bladder problems. (Tr. 395) Plaintiff did continue to require some pain medication, Percocet and Morphine. (Tr. 395) Dr. Whitbeck considered Plaintiff to be "temporarily totally disabled". (Tr. 396)  By June, 2011, Dr. Whitbeck

recommended continued physical therapy and that Plaintiff try to wean off of his narcotic medication. (Tr. 407)

## DISCUSSION

### I. <u>Scope of Review</u>

Title 42 U.S.C. §405(g) directs the Court to accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938).  The Court's scope of review is limited to determining whether the Commissioner's findings were supported by substantial evidence in the record, and whether the Commissioner employed the proper legal standards in evaluating the plaintiff's claim. <u>Mongeur v. Heckler,</u> 722 F.2d 1033, 1038 (2d Cir. 1983).

Judgment on the pleadings pursuant to F.R.C.P. 12(c) may be granted where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. <u>Sellers v. M.C. Floor Crafters, Inc.</u>, 842 F.2d 639 (2d Cir. 1988).  If. after reviewing the record.

### II. <u>The Commissioner's Decision to Deny Benefits is Supported by Substantial Evidence in the Record</u>

The ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act.  In doing so, the ALJ adhered to the Social Security Administration's five step sequential analysis evaluating disability benefits. (Tr. 12-18)  The five step analysis requires the ALJ to consider the following: 1) whether the claimant is performing substantial gainful activity; 2) if not, whether the claimant has a severe impairment which significantly limits his or her physical or mental ability to do basic work activities; 3) whether the claimant suffers a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment(s) meets or medically equals a listed impairment contained in Appendix 1, Subpart P, Regulation No. 4, if so, the claimant is

presumed disabled; 4) if not, the ALJ next considers whether the impairment prevents the claimant from doing past relevant work given his or her residual functional capacity; 5) if the claimant's impairments prevent his or her from doing past relevant work, whether other work exists in significant numbers in the national economy that accommodates the claimants residual functional capacity and vocational factors, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v) and 416.920(a)(4)(i)-(v).

Under step one of the process, the ALJ found that the Plaintiff had not engaged in substantial gainful activity at any time during the period from his alleged onset date through is date of last insured of June 30, 2009. (Tr. 14)  The ALJ next found that the Plaintiff suffered from the following severe impairments: lumbar degenerative disc disease and pancreatitis.  (Tr. 14)  At step 3, The ALJ found that Plaintiff's impairments did not meet or medically equal the listed impairments in Appendix 1, Subpart P. (Tr. 14)  Further, the ALJ found that the Plaintiff had the residual functional capacity to perform a full range of sedentary work but he was unable to perform any past relevant work. (Tr. 14, 17) Finally, the ALJ determined that considering Plaintiff's age, education, and past relevant work experience, Plaintiff was able to perform the full range of sedentary work and he was not disabled within the meaning of the Social Security Act. (Tr. 17-18).

Plaintiff argues that the ALJ erred by in its failure to properly evaluate the medical evidence, Plaintiff's credibility and failed to apply the Treating Physician Rule.   Based on the entire record, including the medical evidence, I find that there is substantial evidence in the record to support the ALJ conclusion that the Plaintiff was not disabled within the meaning of the Social Security Act.

## A.    The ALJ Properly Evaluated the Medical Record

Plaintiff contends that the ALJ improperly evaluated the medical evidence by failing to address the early treatment of pancreatitis by Dr. Sorrentino and the October 2008 Independent Medical Examiner's report (Tr. 302) and the August 2008 function evaluation by Dr. Hartman which treating specialist Dr. Whitbeck adopted.   Moreover, Plaintiff argues that the Decision fails to assess the

objective findings of medical abnormality and the references in the medical record to the 2006 MRI study.  Finally, Burdick notes that overall consistency of the treating sources should have been assessed in the findings and conclusions of impairment. Specifically, he points out that the fact that Drs. Leone, Whitbeck and DellaPorta, as well as occupational therapists do not challenge the legitimacy of Plaintiff's disorder and pain which lends credibility to his allegations.

In assessing a claimant's RFC, the ALJ must consider all of the relevant medical and other evidence in the case record to assess the claimant's ability to meet the physical, mental, sensory and other requirements of work. 20 C.F.R. § 404.1545(a)(3)-(4).  It is within the province of the ALJ to weigh conflicting evidence in the record and credit that which is more persuasive and consistent with the record as a whole. See, e.g., Veno v Barnhart, 312 F. 3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.") (citing Richardson v. Perales, 402 U.S. 389, 399 (1971)); Schaal v. Apfel, 134 F.3d 496, 504 (2d Cir. 1998) ("It is for the SSA, and not this court, to weigh the conflicting evidence in the record.")

Here, the ALJ concluded that Plaintiff had the ability to perform a full range of sedentary work. (Tr. 18)  Sedentary work involves lifting no more than ten pounds and involves limited walking or standing. 20 C.F.R. § 404.1567(a).  The ALJ reached this conclusion from a review of all of the relevant medical evidence as well as evaluating Plaintiff's subjective complaints.

The ALJ gave great weight to the findings of Dr. Fleig because of his extended treatment and observation of Plaintiff. (Tr. 15)  He acknowledged the findings of the MRI and the diagnosis of Dr. Fleig of chronic low back pain due to lumbar degenerative disc disease resulting in decreased range of motion of the spine. (Tr. 15)  The ALJ accepted Dr. Fleig's findings of Plaintiff's abilities to sit for up to 8 hours in an 8 hour day and stand or walk up to four hours and lift and carry objects up to 20 pounds occasionally as consistent with the ability to perform sedentary work. (Tr. 15)  The ALJ also gave great weight to the opinion of Dr. Whitbeck who also provided a functional capacity evaluation of Plaintiff that indicated Plaintiff to be capable of sedentary work. (Tr. 16)  Both Dr. Fleig and

Dr. Whitbeck noted that Plaintiff needed medication to relieve the pain and observed a limitation of Plaintiff's range of motion but agreed that he was capable of performing sedentary work.

Similarly, the ALJ noted the opinions of orthopedic surgeon Dr. Leone and the findings at Rochester General Hospital were consistent with the medical evidence of record reflecting Plaintiff's complaints of pain and their recommendation to continue with chiropractic and pain management for a course of treatment. (Tr. 16)  Contrary to Plaintiff's argument that the ALJ ignored medical evidence concerning his pancreatitis, the 2006 MRI and the opinion of Dr. Hartman were considered by the ALJ along with  all the evidence in the record and found it to be consistent with his findings.  This Court agrees.

Dr. Hartman also concluded that plaintiff could work at the sedentary level.  He opined that plaintiff could tolerate only occasional pushing, pulling, balancing and stooping. Dr. Hartman felt that plaintiff could carry up to ten pounds, crouch, kneel and reach forward and overhead frequently.  (Tr. 205)  In October, 2008, Dr. Fleig noted that although plaintiff had lumbar degenerative disc disease, there "appears to be a low level of impact on his low lumbosacral spine function." (Tr. 276)  Dr. Fleig observed that plaintiff was able to get on and off the exam table without difficulties and his motor function and reflexes were intact.  (Tr. 276)  While Dr. Fleig acknowledged that plaintiff had a few episodes of pancreatitis which he did not view this as an impediment to plaintiff working a sedentary job.  Any restrictions that Dr. Fleig imposed on Plaintiff's ability to work were consistent with the full range of sedentary work.  "Specifically, I would recommend no lifting greater than 20 lbs., no repetitive back movements (bending, climbing ladders, etc.) and no prolonged sitting (no greater than four hours continuous, may sit for a total of 8 hours in an 8 hour shift with breaks) or prolonged standing (no greater than 1 hour continuous, may stand for a total of 4 hours in an 8 hour shift with breaks)." (Tr. 276)

This Court finds that the ALJ did not violate the Treating Physician Rule.  The opinion of a

treating physician on the nature or severity of a claimant's impairments is binding if it is supported by medical evidence and not contradicted by substantial evidence in the record. <u>Burgess v.</u> Astrue, 537 F.3d 117, 128 (2d Cir. 2008).  Here, all of the treating and examining physicians' opinions during the relevant time period were consistent with the finding of a sedentary residual functional capacity.

Plaintiff also contends that the ALJ erred in not specifically considering the medical record for the period of time after Plaintiff was last insured.  While the ALJ did not discuss medical evidence after this date, there is nothing in the medical records that would establish a disabling impairment during the relevant period of time from May 15, 2007 through June 30, 2009.

**B.** **There is Substantial Evidence to Support the ALJ Determination of Plaintiff's Residual Functional Capacity**

In determining Plaintiff's residual functional capacity, the ALJ considered Plaintiff's statements about his subjective complaints of pain and functional limitations and found that they were not entirely credible.  (Tr. 17)  The ALJ noted Plaintiff's own testimony that he was able to perform lighter duty work at the same company for another year after he was injured and that Plaintiff testified at the hearing that he was capable of performing work as a casino dealer. (Tr. 15, 31, 33, 44)  Plaintiff's testimony was consistent with the VESID vocational rehabilitation counselor that stated Plaintiff demonstrated the potential for success in a variety of career areas, vocational training and an associate degree college program. (Tr. 323)  The ALJ did not discount Plaintiff's complaints entirely.  Rather, in assessing Plaintiff's residual functional capacity, the ALJ determined that Plaintiff was unable to perform more than sedentary work.  Accordingly, Plaintiff's argument that the ALJ failed to properly assess his subjective complaints is rejected.

This Court also disagrees with Plaintiff's claim that the ALJ's failure to properly evaluate the effect of depression on Plaintiff's impairments warrants remand.  While the record reflects that Plaintiff mentioned to doctors that he was feeling depressed about his condition and lack of work, there is no medical evidence that would establish that Plaintiff suffered from clinical depression.  Not only was

Plaintiff not treated for this condition but there is no indication that any medical provider even referred Plaintiff to seek evaluation for depression.

Finally, the Court finds no error in the ALJ's reliance upon the grids even absent the testimony of a vocational expert. The Commissioner ordinarily meets his burden at the fifth step by resorting to the applicable medical vocational guidelines (the "grids"). 20 C.F.R. Pt. 404, Subpt. P, Appendix 2. Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir. 1986). Although the grid results are generally dispositive, exclusive reliance on the grids is inappropriate where the guidelines fail to describe the full extent of a claimant's physical limitations. "Sole reliance on the [g]rid [s] may be precluded where the claimant's exertional impairments are compounded by significant nonexertional impairments that limit the range of sedentary work that the claimant can perform." Id. In these circumstances, the Commissioner must "introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform." Bapp, 802 F.2d at 603.

Here, there is no evidence of nonexertional impairments that would limit the range of work permitted by Burdick's exertional limitations. The ALJ considered the limitations imposed by Plaintiff's impairments and correctly determined that Plaintiff could perform all or substantially all of the exertional demands at the sedentary level of work. (Tr. 18) Based on all of the evidence in the record, the ALJ properly determined Plaintiff's vocational capabilities fit within the criteria of the grids. Blacknall v. Heckler, 721 F.2d 1179, 1181 (9th Cir. 1983) (per curiam) (reliance on grids approved where substantial evidence supported ALJ's finding that plaintiff's nonexertional impairments "did not significantly limit the range of work permitted by his exertional limitations")

## CONCLUSION

After careful review of the entire record, and for the reasons stated, this Court finds that the Commissioner's denial of DIB was based on substantial evidence and was not erroneous as a matter of law.  Accordingly, the Commissioner's decision is affirmed. For the reasons stated above, the Court grants Commissioner's motion for judgment on the pleadings (Dkt. No. 10). Plaintiff's motion for

judgment on the pleadings is denied (Dkt. No. 11), and Plaintiff's complaint (Dkt. No. 1) is dismissed with prejudice.

**IT IS SO ORDERED.**

S/Michael A. Telesca

_____

Honorable Michael A. Telesca
United States District Judge

DATED:      July 12, 2013
            Rochester, New York